LORI A. COOPER, NOW KNOWN AS LORI A. SANDERS, APPELLANT, V. DAVID M. COOPER, APPELLEE.

598 N.W. 2d 474

Filed July 20, 1999. No. A-98-319.

David L. Kimble for appellant.

Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., for appellee.

HANNON, SIEVERS, and CARLSON, Judges.

HANNON, Judge.

In this action, David M. Cooper, the custodial parent, sought and obtained an increase in child support from the mother, Lori A. Cooper, now known as Lori A. Sanders, who was required to pay a greater sum to reflect the completion of her education and her employment in the nursing profession. The trial court increased the support to an amount reflecting Lori's earning capacity if she worked 40 hours per week and made the increase retroactive to more than a year before the order was issued. Upon appeal, we find increasing the support based upon Lori's earning capacity was not an abuse of discretion, but under the facts in this case, we find that making the increase retroactive was an abuse of discretion. Accordingly, we affirm as modified.

## STATEMENT OF FACTS

David and Lori were divorced on July 23, 1993. The court awarded David custody of their two children. The court ordered Lori, who was studying to be a nurse at the time, to pay $50 per month child support. On October 17, 1994, Lori filed a petition to modify the divorce decree to obtain custody of the children. On December 30, David answered the petition and cross-petitioned for an increase in child support. On September 16, 1996, David filed a motion for temporary increase in child support, and Lori filed a response. On September 25, the trial court heard the motion, but the record does not indicate that the court made a ruling on it. On January 8, 1998, Lori dismissed her petition, and the matter was heard on David's cross-petition.

At the trial, David entered his 1997 W-2, showing he earned $43,955.19 from his job at Square D Company and stated that he made an additional $2,000 by working as a private investigator. His child support calculations failed to include the $2,000, but he calculated Lori's monthly income on the assumption she worked 40 hours a week.

Lori testified she completed nursing school in March 1996 and started working, earning $12.45 an hour. She testified that she currently worked at Lincoln General Hospital as an intensive care, critical care nurse, earning a base pay of $13.79 an hour, but that she was paid more if she worked weekends. The record does not indicate how much more. Lori stated she only worked 40 to 48 hours every 2 weeks at her own election, and when needed by the hospital. She testified that she did not work full time so she could be available when her children had activities and so she could work the weekends when she did not have the children on visitation. The parties stipulated that full-time employment was available to her at that hospital.

At the time of the hearing, David lived near Denton, Nebraska, and Lori lived near Dwight, Nebraska, over 35 miles apart. Lori was pregnant at the time of the hearing.

On February 24, 1998, the trial judge issued a formal order finding Lori's gross monthly income to be $2,332, which is approximately $13.50 per hour for a 40-hour workweek. The worksheet shows the court computed David's gross monthly income to be $3,666 per month, which is his earnings from his

principal job. The worksheet showed Lori should pay child support of $584 a month for two children and $399 a month for one. The court ordered the child support as indicated by that worksheet, and the increase to $584 per month was made retroactive to January 1, 1996. Lori appeals.

## ASSIGNMENTS OF ERROR

Lori alleges the trial court erred (1) when it based her income on her earning capacity instead of her actual earnings and (2) when it made the child support retroactive to January 1, 1996.

## STANDARD OF REVIEW

■ Modification of the amount of child support payments is entrusted to the discretion of the trial court, and although, on appeal, the issue is reviewed de novo on the record, the decision of the trial court will be affirmed absent an abuse of discretion. *Faaborg v. Faaborg*, 254 Neb. 501, 576 N.W.2d 826 (1998).

## ANALYSIS

■ A party seeking to modify a child support order must show a material change in circumstances which has occurred subsequent to the entry of the original decree or a previous modification and was not contemplated when the decree was entered. *Rauch v. Rauch*, 256 Neb. 257, 590 N.W.2d 170 (1999); *Swenson v. Swenson*, 254 Neb. 242, 575 N.W.2d 612 (1998); *Knaub v. Knaub*, 245 Neb. 172, 512 N.W.2d 124 (1994); *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). Paragraph Q of the Nebraska Child Support Guidelines allows for a modification based upon a change in income if there is "a variation by 10 percent or more, upward or downward, of the current child support obligation." Without dispute, a change of circumstances exists in this case.

Lori argues the district court erred in setting her child support in the amount of $584 per month, because the award is inconsistent with the Nebraska Child Support Guidelines. Lori asserts she submitted evidence that her total income from working was only $833 a month, although somehow her net monthly income was $935 a month. She stipulated full-time work was available at her present hourly rate and testified that she worked part time by her own election. Lori argues that her part-time status was

not done in bad faith and that she worked part time so she could spend more time with her children. Therefore, she contended that her actual earnings, not her earning capacity, should be used to compute her monthly income and that it was unjust and inappropriate to charge her with her earning capacity of working full time.

Lori's view is not consistent with Neb. Rev. Stat. § 42-364(6) (Reissue 1998), which provides in significant part: "In determining the amount of child support to be paid by a parent, the court shall consider the *earning capacity* of each parent and the guidelines provided by the Supreme Court." (Emphasis supplied.) Paragraph D of the Nebraska Child Support Guidelines provides that the parties' income from all sources shall be used, but the same rule provides: "If applicable, earning capacity may be considered in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities." The evidence clearly showed Lori had the job opportunity to make the amount the court found to be her earning capacity.

Similarly, the Nebraska Supreme Court recently held in *Betz v. Betz*, 254 Neb. 341, 575 N.W.2d 406 (1998), that the proper amount of child support is not necessarily determined by a parent's earnings but by the parent's earning capacity and concluded that the trial court did not err in determining the amount of child support from the appellant's earning capacity, rather than his earnings. Most parents in our society find sufficient time to spend with their children while working a 40-hour week. Without any specific evidence showing an inability to spend adequate time with the children while working 40 hours per week, as opposed to a general claim of such inability, most triers of fact would not be convinced of the parent's need to work less than a normal workweek in order to spend adequate time with the parent's children. Hence, we cannot say the trial court abused its discretion by setting Lori's child support based on her earning capacity for a normal workweek.

Lori contends the trial court erred in providing the modification of the child support was to be retroactive to January 1, 1996. Lori admits that the Nebraska Supreme Court in *Maddux v. Maddux*, 239 Neb. 239, 475 N.W.2d 524 (1991), recognized

that under certain conditions, modification of a child support order may be made retroactive to the date of the filing of the petition, but whether or not retroactivity should be applied depends upon the equities of each case.

Lori argues that it would be unjust to make her pay child support retroactively because she was never late with her $50 a month child support payments and that only one delay in hearings in the case was her fault. She claims to have acted in good faith. Lori argues that the trial court abused its discretion by applying the modification retroactively before her earning capacity increased with her graduation from nursing school, because the modification increased her child support retroactively from January 1, 1996, and she did not graduate and become employed until March 1996.

In *Maddux*, the ex-husband moved to lower his child support retroactively. The *Maddux* court noted several cases that allowed modifications to apply retroactively, and in each of those cases, the moving party, the payor, generally had acted in good faith in attempting to meet his or her obligation to pay child support. In each of those cases, the payor moved to reduce his or her child support. While the *Maddux* court recognized that retroactive modification could be had, it stated: "The general rule in Nebraska has been to allow a modification of a child support order prospectively from the time of the modification order itself." *Id.* at 244, 475 N.W.2d at 529.

In *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993), the Nebraska Supreme Court ruled that a "support order retroactive to the filing date of the application for modification is permissible." (Syllabus of the court.) In *Wulff*, the evidence shows the child had moved back into the mother's home and was supported by her without help from the father, while a support obligation from the mother to the father for another child continued to accrue. Thus, in allowing for retroactive modification, the *Wulff* court was merely treating both parties the same.

The Nebraska Supreme Court most recently addressed the issue of retroactively raising child support in *Faaborg v. Faaborg*, 254 Neb. 501, 576 N.W.2d 826 (1998). The court ruled that "[i]n determining the amount of a child support award, this court has consistently held that the trial court must consider the

status, character, and situation of the parties and attendant circumstances, including the financial condition of the parties and the estimated cost of support of the children." *Id.* at 505, 576 N.W.2d at 829. The *Faaborg* court effectively modified and applied that rule to the issue of whether child support should be made retroactive. In *Faaborg*, the obligated parent had an income in excess of $250,000 per year, as compared to the other parent's income of approximately $25,000 per year. Thus, the ability of the obligated parent to pay the retroactive child support was clear.

■ The rule providing that the status, character, and situation of the parties and attendant circumstances should be considered in determining whether to make child support modifications retroactive naturally requires consideration of the obligated party's ability to pay the lump sum that will necessarily result in such a retroactive order. We find no cases in which the ability of the obligated party to pay the retroactively ordered support is discussed, but we think the ability to pay is a paramount factor. We think that in the absence of a showing of bad faith, it is an abuse of discretion for a court to award retroactive child support when the evidence shows the obligated parent does not have the ability to pay the retroactive support and still meet current obligations.

By the retroactive order on February 24, 1998, the court imposed on Lori an arrearage of $534 per month for 26 months; that is $13,884, assuming she was current on her obligation when the retroactive order was entered. This prejudgment arrearage would give her a debt as of March 1, 1998, of $13,884 for premodification support.

In the 1993 divorce decree, the court found the value of the property assigned to Lori was $4,500 with $1,100 in credit card debt. The evidence showed that Lori was a full-time student from that time until her graduation in March 1996 and that after she graduated, she did not in fact make the amount of money the trial court found to be her earning capacity because she only worked part time. The only other evidence in the record concerning Lori's present ability to pay such an arrearage is her testimony that she and her present husband are able to pay their house mortgage by his working full time and her working part

time. She was described at the January 8, 1998, trial as being "[v]ery pregnant." In the judge's notes, the judge stated: "I declare in advance that all sums in arrears because of the retroactivity shall not be enforceable by contempt." We take this as tantamount to a finding that Lori does not have the ability to pay the arrearage. From our review of the record, we agree.

It is one thing for a court to use earning capacity for setting a parent's future support and thereby sending the parent the message that she or he must work harder to fulfill his or her share of the parental obligation to the children, but it is another thing to impose a huge debt on such a parent when that parent has no realistic expectation of being able to pay it. The $13,884 debt, with interest, for the retroactive child support would require approximately an extra $200 per month payment if it is to be paid in 6 years. By all indications, Lori's premodification work schedule was not for the purpose of avoiding child support. She paid the support she was ordered to pay on time. There is no indication of any lack of good faith on Lori's part.

We, therefore, conclude that it was an abuse of discretion for the trial court to vary from the general rule by ordering the child support increased retroactively. Hence, we affirm the amount of the increase but modify the order to provide that the increase shall commence as of March 1, 1998.

AFFIRMED AS MODIFIED.