THERESA M. LAWSON, APPELLEE, V.
WAYNE PASS, APPELLANT.

633 N.W.2d 129

Filed September 4, 2001. No. A-00-512.

Clay M. Rogers and Patrick E. Griffin, of Dwyer, Smith, Gardner, Lazer, Pohren, Rogers & Forrest, for appellant.

Benjamin M. Belmont, of Lustgarten & Roberts, P.C., for appellee.

IRWIN, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.
The father of a 7-year-old daughter born out of wedlock appeals the Douglas County District Court's paternity decree ordering him to pay retroactive child support in the amount of $20,945, calculated at $295 per month, which he is to pay at the rate of $100 a month until he eliminates the arrearage. In attacking the decree, the father contests the propriety of the mother's bringing this action for support because she is not a real party in interest. He asserts that the trial court failed to complete the child support worksheets which justify the award. He further asserts that it was improper for the court to characterize an award of attorney fees for the mother as child support in order to make the award thereof nondischargeable in bankruptcy. The judge's failure to complete the child support worksheets, among other reasons, causes us to reverse, and remand portions of the decree. We affirm and vacate other portions of the decree.

## I. FACTUAL BACKGROUND
Tiffany C. Pass was born to Theresa M. Lawson on April 1, 1994. Wayne Pass admitted paternity and was listed as the father on Tiffany's birth certificate. At the time Tiffany was born, Theresa was living with Wayne in Omaha, Nebraska, but they kept their finances separate. Theresa claims she owned a home, but Wayne says she was renting a home. In either event, Wayne did not dispute that Theresa alone paid the housing expense.

Wayne claims that he and Theresa lived together continuously for the first 3 years after Tiffany's birth, but Theresa challenges this claim, stating that they lived together "[o]ff and on."

Theresa was about 33 years old and Wayne was about 36 years old at the time of Tiffany's birth, and the highest level of education either Theresa or Wayne attained was a high school diploma. During the first few years of Tiffany's life, Theresa worked full time at a job which did not allow her time off to care for Tiffany, but the job did provide medical insurance for Tiffany. Theresa earned $26,176 in 1994, $27,154 in 1995, $28,688.58 in 1996, and $30,973 in 1997. Wayne was a painter with about 10 years' experience when Tiffany was born. During the first 3 years of Tiffany's life, he was self-employed while starting a painting business. He testified that he earned $8,000 to $10,000 annually in 1994, 1995, and 1996. Wayne claims his earnings were reduced during these years because Tiffany was frequently ill, and he often cared for her as Theresa could not freely leave work. However, Theresa disputes that Wayne shouldered much of the child-care responsibility at this time. Theresa claims that she usually dropped Tiffany off at Theresa's mother's house on her way to work and picked Tiffany up at the end of her workday. During this period, Wayne provided an unspecified amount of money for Tiffany's clothes and cash for Theresa. In 1994, he painted the interior of a house Theresa had bought and then sold 7 months later, in 1995, for a $4,000 profit.

From early 1998 through early 2000, when Tiffany was 4 to 5 years old, Wayne lived with Theresa "[o]ff and on." In late 1997, Wayne began to work full time as a painter of commercial and residential buildings for the Lund Company, earning $10 an hour. He testified that he earned about $20,000 in 1997. His 1998 tax return shows that he earned $21,436 that year. In 1998, Theresa earned $35,867, according to her tax return. However, in December, Theresa began a new job as an insurance clerk for Omaha Psychiatric Associates, although her previous job paid more. Theresa made this change because her previous employer was going to transfer her to another department requiring her to work nights and other hours incompatible with Tiffany's child-care needs. Theresa is paid $10 an hour and earned $21,883 in 1999, according to her tax return. Wayne testified that he earned

$10 an hour, or about $20,000, in 1999. His March 3, 2000, earnings statement from the Lund Company showed that he was being paid $11.25 an hour in 2000.

This earnings statement for a 2-week period shows that $100 was withheld from Wayne's check for "Child Support." The "year to date" column for deductions shows that $400 had been withheld from Wayne's pay in 2000, but there is no other evidence how often this deduction is taken. And while the record is otherwise silent on this matter, the inference is clear that this child support is for a child other than Tiffany, as the only undisputed evidence of Wayne's monetary support of Tiffany was a $50 payment in June 1999. Wayne testified that his offers to provide monetary support after he moved from Theresa's home in 1997 were often spurned by Theresa due to her jealousy of his relationships with other women. However, there is no evidence of the amount he offered or Theresa accepted, except for the $50 payment in June 1999, which Theresa agreed that she received.

## II. PROCEDURAL BACKGROUND

Theresa filed a paternity action against Wayne in Douglas County District Court on May 11, 1999. Theresa sought child support on behalf of Tiffany, in a sum to be determined pursuant to the Nebraska Child Support Guidelines and applied retroactively to the date of Tiffany's birth. She also sought reasonable attorney fees. In his answer, Wayne admitted paternity, but disputed that the court should award retroactive child support because he alleged that he regularly made support payments in the past. Wayne's counsel conceded at oral argument in this court that retroactive support is the law generally applied in a paternity case.

Although the record does not include a petition filed by the State on Tiffany's behalf, it does contain Wayne's demurrer to a petition dated February 9, 2000, by the State. In this demurrer, Wayne referenced Theresa's action against him in the same court and asked that the State's petition be dismissed. On February 15, Wayne filed a motion to stay proceedings, alleging that Theresa was not the real party in interest and that she lacked standing to bring this action because she had made an assignment to the State concerning payments for Tiffany. Wayne

prayed that the court stay these proceedings pending resolution of the action involving the State. On March 10, the State filed a motion to intervene in Theresa's action against Wayne, alleging that Tiffany was receiving medicaid. A trial docket entry dated March 16, 2000, shows that the court deemed Wayne's motion to stay proceedings moot and granted the State's motion to intervene in Theresa's case.

Trial was held on Theresa's petition on March 22, 2000. The record shows that Theresa and Wayne stipulated that custody and visitation were not at issue. They further stipulated that "child support has been agreed to pursuant to the Nebraska child support guidelines in the sum of 295 dollars." The parties agreed that the retroactivity of the child support was an issue to be decided, but that the stipulated amount of $295 per month was applicable only to future child support owed. However, both parties failed to submit a basic net income and support calculation worksheet supporting the figure of $295 per month as Tiffany's future child support. Wayne and Theresa further agreed that he would pay half of any child-care expenses incurred by Theresa, on Tiffany's behalf, while Theresa is employed or obtaining training or education necessary to obtain a job or enhance her earning potential. Wayne agreed to maintain life insurance to ensure the child support obligation. He agreed to maintain health insurance on behalf of Tiffany and contribute 50 percent for payment of Tiffany's noncovered medical and dental expenses. There is no written stipulation in the record, as we have only the oral statements of counsel. The issues decided by the trial court were whether Wayne's child support obligation would be applied retroactively to the date of Tiffany's birth, the amount of such retroactive child support, and whether Wayne would be responsible for Theresa's attorney fees.

Theresa introduced evidence that her net monthly income is $1,250, that monthly living expenses total $1,945 for her and Tiffany, and that she receives financial assistance from her family to make ends meet. Wayne introduced evidence at trial that his biweekly gross pay is $900. His earnings statement shows that Wayne's net pay for a 2-week period was $561.95, but that figure does not take into account the increased premium he will pay in the future to provide Tiffany with medical and dental

insurance. At the end of the trial, the court questioned, but did not receive an answer, regarding whether the State would be reimbursed for medicaid payments made on Tiffany's behalf.

Ruling from the bench, the trial court opined that Wayne is a very healthy individual who did not testify to any physical or mental ailment precluding full-time employment. The trial court concluded from Wayne's testimony that the first time he held a steady job was in 1997, that he was currently 43 years old, and that he did not believe that he had failed to meet his parental financial obligations because Theresa "had a good job."

The trial court ordered Wayne to pay child support retroactive to the date of Tiffany's birth, using the sum of $295 per month for 71 months to arrive at a total of $20,945. The arrearage was to be paid at the rate of $100 per month. The court's later written order provided that Wayne pay Theresa's counsel $750 in attorney fees as "a liability in the nature of support," which the court intended to be nondischargeable in bankruptcy. Wayne testified that he filed a chapter 7 bankruptcy petition on March 22, 2000, but he expressly waived any stay from such filing for this paternity case. Wayne timely filed his appeal of the trial court's decree.

## III. ASSIGNMENTS OF ERROR

Wayne's assignments of error are that the trial court erred in (1) finding that the cause of action for child support belongs to the mother, rather than to the child; (2) awarding retroactive child support; (3) failing to complete a basic net income and support calculation worksheet with respect to awarding retroactive child support; and (4) attempting to disguise an award of attorney fees as child support.

## IV. STANDARD OF REVIEW

The standard of review of an appellate court in child support cases is de novo on the record. *State v. Porter*, 259 Neb. 366, 610 N.W.2d 23 (2000). While a paternity action is one at law, the award of child support in such an action is equitable in nature. *Weaver v. Compton*, 8 Neb. App. 961, 605 N.W.2d 478 (2000).

On questions of law, an appellate court has an independent obligation to reach the correct conclusion. *Morrill County v. Darsaklis*, 7 Neb. App. 489, 584 N.W.2d 36 (1998). It is well established that the Nebraska Child Support Guidelines are

presumptively applicable in determining child support in cases of children born out of wedlock. *Id.* A trial court's award of child support in a paternity case will not be disturbed on appeal in the absence of an abuse of discretion. *Id.* A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000).

## V. ANALYSIS

### 1. Cause of Action Belongs to Child

Wayne argues that the real party in interest in this action is Tiffany, not Theresa, and that because the case title included Theresa's name rather than Tiffany's, the wrong party filed the action for recovery of retroactive child support. The case caption simply reads, "Theresa M. Lawson v. Wayne Pass." In the body of the petition, Theresa sought child support from Wayne, without stating that she was acting on Tiffany's behalf. However, in the prayer portion of Theresa's petition, she requested that Wayne be required to pay "[c]hild support on behalf of the minor child."

Before the trial herein, Wayne filed a demurrer in the other case on the Douglas County District Court docket in which the State was apparently suing him for support of Tiffany. The petition in that case is not in this record, but Wayne's demurrer is, and the sole ground for the demurrer is the pendency of the instant action which he says also seeks to establish paternity. He asked that the court sustain his demurrer and dismiss the State's petition. Our record is silent on what action, if any, was taken on Wayne's demurrer. On February 15, 2000, Wayne filed a motion to stay proceedings in this case, alleging that Theresa had assigned her rights relating to Tiffany to the State and that therefore, she was not the real party in interest and lacked standing to maintain these proceedings. After a hearing on Wayne's motion, held March 16, the court made a trial docket entry in which the court granted the State leave to intervene in Theresa's petition and deemed Wayne's motion to stay proceedings moot.

At trial, as part of Wayne's counsel's relevancy objection to Theresa's counsel's line of questioning of Wayne regarding the financial support he could prove that he provided Tiffany, Wayne's counsel objected that Theresa's petition did not properly name Tiffany as the plaintiff. The trial court overruled the objection, agreeing with Theresa's counsel's argument that Wayne waived this objection by failing to raise it in his answer or in a demurrer. Further, the court noted that it could allow Theresa to amend the case title and that the amendment would take only seconds to do so, but such an amendment was not done.

■ Neb. Rev. Stat. § 25-806 (Reissue 1995) provides, in relevant part, that a defendant may demur to a petition when it appears on its face that there is a defect of parties, plaintiff, or defendant. Moreover, Neb. Rev. Stat. § 25-808 (Reissue 1995) provides in part: "When any of the defects enumerated in section 25-806 do not appear upon the face of the petition, the objection may be taken by answer, and if no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same." These statutes were applied in *Professional Collection Service v. Coble*, 200 Neb. 683, 684, 264 N.W.2d 686, 687 (1978), where the court said that the "defendant's failure to timely object waived any error based on the defect in the caption." The defendant in *Coble* failed to object prior to trial that there was such defect, thereby waiving his objection. Wayne now alleges a defect of parties in this case which appeared on the face of the petition. Thus, he should have demurred on that basis to preserve the matter—but he did not. Therefore, he waived the objection that Theresa was not the proper party in interest to bring this action for child support against him.

### 2. Award of Retroactive Child Support

Wayne's counsel conceded at oral argument that in a paternity case, the law is that child support is retroactive. A father must support a child born out of wedlock "to the same extent and in the same manner as the father of a child born in lawful wedlock." Neb. Rev. Stat. § 43-1402 (Reissue 1998). See, *Sylvis v. Walling*, 248 Neb. 168, 532 N.W.2d 312 (1995); *State on behalf of Matchett v. Dunkle*, 244 Neb. 639, 508 N.W.2d 580 (1993). The error argued is that the trial court was wrong in awarding

retroactive child support at the rate of $295 per month, back to the first day of the month after Tiffany was born, that is, May 1, 1994. Wayne was ordered to repay the $20,945 the court determined he owed in retroactive child support at the rate of $100 a month. Clearly, retroactivity is the law; therefore, the question boils down to whether a proper amount was awarded.

■ It is " 'entirely appropriate to use the guidelines in determining the amount of retroactive support to award a child born out of wedlock.' " *Weaver v. Compton*, 8 Neb. App. 961, 966, 605 N.W.2d 478, 483 (2000), quoting *Sylvis v. Walling, supra.* The guidelines provided by the Supreme Court pursuant to Neb. Rev. Stat. § 42-364.16 (Reissue 1998) for the establishment of child support obligations are the polestar for this case. When determining the amount of child support to be paid by a parent, the court must consider the earning capacity of each parent and apply the Nebraska Child Support Guidelines. *Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998); *Cooper v. Cooper*, 8 Neb. App. 532, 598 N.W.2d 474 (1999). Paragraph D of the guidelines provides that a court may consider earning capacity in lieu of a parent's actual, present income and may include factors such as work history, education, occupational skills, and job opportunities in determining that parent's total monthly income used in the basic net income and support calculation worksheet found in the Nebraska Child Support Guidelines.

The parties orally stipulated to $295 per month "pursuant to the Nebraska child support guidelines" and agreed at oral argument in this case that such stipulation was intended for the future only. And, while the trial court used $295 per month retroactively, there is no finding that this was done because of the stipulation, because that was the right amount calculated under the guidelines using actual earnings, or because it was based on earning capacity. In short, we do not know, although the trial court should tell us, why it used $295 per month for the retroactive support. There are no child support worksheets to guide our review, a matter to which we return later.

### (a) Ability to Meet Current Obligations

■ Wayne cites a child support modification case where we held that it was an abuse of discretion for a trial court to award

retroactive child support when the evidence revealed that the obligated parent lacked the ability to pay the $13,884 awarded and still meet current obligations. *Cooper v. Cooper, supra.* In *Cooper,* we noted that " '[i]n determining the amount of a child support award, this court has consistently held that the trial court must consider the status, character, and situation of the parties and attendant circumstances, including the financial condition of the parties and the estimated cost of support of the children.' " 8 Neb. App. at 537-38, 598 N.W.2d at 478, quoting *Faaborg v. Faaborg,* 254 Neb. 501, 576 N.W.2d 826 (1998).

We extended this rule to retroactive child support awards and found that "the ability to pay is a paramount factor." *Cooper v. Cooper,* 8 Neb. App. at 538, 598 N.W.2d at 478. However, *Cooper* addresses a modification of a divorce decree rather than child support ordered in a paternity decree. Additionally, the Supreme Court has now said that absent equities to the contrary, the rule should generally be that the modification of a child support order is applied retroactively to the first day of the month following the filing date of the application for modification. *Riggs v. Riggs,* 261 Neb. 344, 622 N.W.2d 861 (2001). *Riggs* also says that circumstances may exist so that a noncustodial parent lacks the ability to pay retroactive child support and meet current obligations. However, neither *Riggs* nor *Cooper* makes it totally clear whether such a finding means that no retroactive support should be awarded or that the court should devise a payment plan as was attempted here. Additionally, *Cooper* was a modification of divorce support order, and whether the doctrine under discussion applies in a paternity setting was not decided. Nonetheless, Wayne has failed to provide us with evidence of his current obligations beyond what we can glean off of his March 3, 2000, Lund Company earnings statement and the company's benefits summary sheet showing the amount of medical and dental insurance premiums he will have to pay when he adds Tiffany to his policy. Thus, while we acknowledge the holdings of *Riggs* and *Cooper,* this evidentiary record does not support the conclusion that under *Riggs* and *Cooper,* Wayne should be relieved of all retroactive child support, even if we were to hold that the *Cooper* doctrine applies to the retroactive portion of child support in a paternity case—a matter we do not decide. Therefore, on this

record, we find that the trial court did not abuse its discretion by ordering Wayne to pay retroactive child support. The amount ordered, however, remains another matter.

### (b) Net Monthly Income Below Basic Subsistence Limitation

■ Wayne claims that the court's order will reduce his net monthly income to $696, below the minimum subsistence limitation defined by the Nebraska Child Support Guidelines. Paragraph R of the guidelines presently provides:

> A parent's support, child care, and health care obligation shall not reduce his or her net income below the minimum of $716 net monthly for one person, or the poverty guidelines updated annually in the Federal Register by the U.S. Department of Health and Human Services under authority of 42 U.S.C. § 9902(2) . . . .

The minimum net monthly income for one person was set at $687, but was increased to $696 in a March 15, 2000, amendment (1 week before trial). The figure was amended again on April 18, 2001, to the current figure of $716.

Based upon Wayne's testimony, and his earnings statement showing that he is paid $11.25 an hour and works a 40-hour week, we determine his monthly gross income to be $1,950 (40 hours × 52 weeks × $11.25 ÷ 12). On a monthly basis, Wayne will pay $270.86 for income taxes, $115.22 for Social Security, $146.62 for medical and dental insurance for Tiffany, and as much as $216.67 for a child support obligation to a child other than Tiffany (depending on whether this support is $100 per pay period or $100 per month, a matter undisclosed by this record). Thus, Wayne's net monthly income could be $1,200.63 before paying prospective child support of $295, retroactive child support of $100, and half of the child-care expenses for Tiffany, which amounts to $172.50 (derived from Theresa's evidence that she spends $345 per month on child care). Subtracting these amounts from $1,200.63 reduces Wayne's available monthly income to $633.13, less than all of the figures recited above as basic subsistence limitation minimum amounts for net monthly income of a parent ordered to pay child support.

Wayne's contention that the court's order compelling him to pay retroactive child support would impermissibly decrease his net monthly income below the amount considered the basic subsistence minimum limitation amount reported in paragraph R of the Nebraska Child Support Guidelines quite clearly has potential merit—depending on the details of the support for the other child—regardless of which minimum amount for subsistence is used. But so far as we can tell, paragraph R was not considered by the trial court. This is another problem created by the trial court's failure to heed the frequent pleas, admonitions, directions, and direct orders of the appellate courts to "use the worksheets," our next topic.

### 3. FAILURE OF TRIAL COURT TO PROVIDE WORKSHEET

Most recently in *Stewart v. Stewart*, 9 Neb. App. 431, 434, 613 N.W.2d 486, 489 (2000), we said that paragraph C of the guidelines specifically mandates that " '[a]ll orders for child support, including modifications, must include a basic income and support calculation worksheet' " from the Nebraska Child Support Guidelines. We pointed out that this requirement has been repeatedly emphasized. See, *id.*; *Baratta v. Baratta*, 245 Neb. 103, 511 N.W.2d 104 (1994); *Laubscher v. Laubscher*, 8 Neb. App. 648, 599 N.W.2d 853 (1999); *State of behalf of Elsasser v. Fox*, 7 Neb. App. 667, 584 N.W.2d 832 (1998); *Becker v. Becker*, 6 Neb. App. 277, 573 N.W.2d 485 (1997). "In short, the trial courts must show the appellate courts, and the parties, that they have 'done the math.' " *Stewart v. Stewart*, 9 Neb. App. at 434, 613 N.W.2d at 489.

In *Stewart*, at least the record contained worksheets from the parties, although the trial court did not do its duty by adopting a worksheet or preparing its own. Here, the parties only orally stipulated that the prospective "child support has been agreed to pursuant to the Nebraska child support guidelines in the sum of 295 dollars." The trial court may have relied on this representation. However, parties in a proceeding to dissolve a marriage cannot control the disposition of matters pertaining to minor children by agreement. *Weinand v. Weinand*, 260 Neb. 146, 616 N.W.2d 1 (2000), citing *Hickenbottom v. Hickenbottom*, 239 Neb. 579, 477 N.W.2d 8 (1991). Although this proposition of law is directed at

divorcing parents of children, it logically extends to parents of children born out of wedlock. But, if Wayne and Theresa did prepare worksheets under the guidelines to arrive at their stipulation, they should have put them in evidence to help create a more complete record to assist the trial court, as well as the appellate courts should an appeal result. The matter is complicated by the fact that although we have Theresa's 1994 through 1999 income tax returns, exhibits showing Theresa's gross monthly income and deductions, and her monthly living expenses, we have only Wayne's 1998 income tax return and one Lund Company earnings statement dated March 3, 2000, from which to deduce his monthly income and deductions, plus an insurance benefits summary providing the figures from which we can calculate the increase in monthly premium Wayne will need to pay to obtain medical and dental insurance for Tiffany. With respect to prospective child support, this is a less than ideal record.

While we are disinclined to do the trial court's work, we are mindful of the inequity to the parties of making them wait longer for the resolution of this matter because the trial court has not done what the higher courts have consistently said must be done—use the worksheets. Nonetheless, from the evidence about the parties' current earnings, we have done our own worksheet and discern that Wayne's prospective child support obligation of $295 per month is within $10 per month of what the guidelines would dictate. Considering that the $295 is slightly above or below what the guidelines would require (depending on what one assumes about how often support for the other child is taken from Wayne's paycheck) and the fact that the parties stipulated to that amount and that no party assigns error to that figure, at least for future child support, as well as the delay and expense for the parties if we were to remand for preparation of a worksheet, we will not disturb the prospective support ordered by the court in reliance on the stipulation.

 However, we vacate the trial court's order concerning retroactive support because (1) there are no worksheets to support it and (2) the trial court arbitrarily used the $295 per week for the entire time since Tiffany's birth without any supporting findings of fact on the record beyond the court's comment that Wayne was "a very healthy looking individual" without any

physical or mental ailments to prevent him from working full time. And while the court's intention may have been to use earning capacity for the entire time period since Tiffany's birth, that was not stated as a finding in the court's decision. Also, the payment of $100 per month for retroactive support as ordered by the court results in an apparent violation of paragraph R of the guidelines concerning subsistence level. Finally, from the $100 per month withheld as child support from Wayne's check, there is evidence that Wayne has another court-ordered support obligation which was not considered by the trial court. Thus, under line 2(e) of worksheet 1, a deduction may well be in order before Wayne's support for Tiffany can be calculated. However, we emphasize that on this issue, the parties wholly failed to make an adequate record for the district court or this court. The trial judge must use the guidelines and complete the requisite worksheets to determine a child support obligation, but the parties themselves should endeavor to create a complete record by supplying their completed worksheets. For all of these reasons, we vacate the award of retroactive support, both as to total amount and method of payment, and remand that matter to the trial court.

On remand, the trial court should complete the income and support calculations worksheet required by the guidelines to determine Wayne's retroactive child support obligations and attach it to its new judgment.

### 4. CHARACTERIZING AWARD OF ATTORNEY FEES AS CHILD SUPPORT

■ Wayne asserts that in an apparent attempt to prevent attorney fees from being discharged by the U.S. Bankruptcy Court, the trial court directed Theresa's counsel to include language in the paternity decree evidencing the trial court's desire that the $750 in attorney fees Wayne was ordered to pay be considered a form of child support so as not to be dischargeable in bankruptcy. This has been attempted before. A trial court may not attempt to characterize attorney fees as a form of child support not dischargeable in bankruptcy because dischargeability is a question of federal law and not state law. *Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000), citing *In re Kline*, 65

F.3d 749 (8th Cir. 1995); *In re Williams*, 703 F.2d 1055 (8th Cir. 1983). In *Boamah-Wiafe*, we found that the part of the trial court's order stating a conclusion about the dischargeability of an attorney fee award should be stricken. We apply the same proposition of law here. Therefore, the portion of the paternity decree evidencing the court's desire that the attorney fees Wayne is to pay be considered a form of child support which the trial court intends "not be dischargeable in bankruptcy" is hereby stricken and shall be deemed of no force or effect, and obviously not binding on the federal bankruptcy court.

## VI. CONCLUSION

We reject Wayne's argument that Theresa was not the real party in interest capable of bringing this support action. We affirm the trial court's order that Wayne pay $295 per month in prospective child support. However, we find that the trial court erred in awarding retroactive child support in an amount that decreases Wayne's net monthly income below the basic subsistence limitation amount allowed by the Nebraska Child Support Guidelines. We also find that the trial court erred in failing to complete the necessary worksheets in determining Wayne's retroactive child support obligation (since that obligation extends for several years, it may be that several worksheets are necessary for various time periods). Therefore, we reverse, and vacate the court's paternity decree in these matters and remand the cause for the trial court's determination of these matters in a manner consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND IN PART VACATED AND REMANDED FOR FURTHER PROCEEDINGS.