the conditional liberty of Workman's participation in the drug court program, based upon the record made at the previous hearing. The sentence imposed is vacated, and the cause is remanded to the district court for resentencing following the entry of the new order.

JUDGMENT REVERSED, SENTENCE VACATED, AND
CAUSE REMANDED FOR FURTHER PROCEEDINGS.

---

COLEEN McDONALD, APPELLEE, AND STATE
OF NEBRASKA, INTERVENOR-APPELLEE, V.
DEL McDONALD, APPELLANT.
___ N.W.2d ___

Filed December 10, 2013.    No. A-12-1058.

1. **Modification of Decree: Visitation: Child Support: Appeal and Error.** Issues involving the modification of a divorce decree, parenting time, and the amount of child support are initially entrusted to the discretion of the district court, whose determinations in these matters are reviewed de novo on the record for an abuse of discretion.

2. **Child Support.** The trial court's discretion to award child support extends to its determination that the child support award should be retroactive.

3. **Attorney Fees: Appeal and Error.** An appellate court reviews a trial court's award of attorney fees for an abuse of discretion.

4. **Courts: Words and Phrases.** An abuse of discretion occurs when a trial court acts or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives the litigant of a substantial right or just result.

5. **Modification of Decree: Child Custody.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action.

6. **Modification of Decree: Words and Phrases.** A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently.

7. **Modification of Decree.** Changes in circumstances which were within the contemplation of the parties at the time of the decree are not material changes in circumstances for purposes of modifying a divorce decree.

8. **Modification of Decree: Child Custody: Proof.** Prior to the modification of a child custody order, two steps of proof must be taken by the moving party. First, the moving party must show a material change in circumstances that affects the best interests of the child. Second, the moving party must prove that changing the child's custody is in the child's best interests.

9. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

10. **Modification of Decree: Child Support: Proof.** A parent seeking to modify a child support award must show a material change in circumstances, including changes in the financial position of the parent obligated to pay support.

11. **Child Support: Rules of the Supreme Court.** Generally, child support payments should be set according to the guidelines established pursuant to Neb. Rev. Stat. § 42-364.16 (Reissue 2008).

12. **Child Support: Rules of the Supreme Court: Presumptions.** Although the child support guidelines are not to be applied with blind rigidity, child support shall be established in accordance with the guidelines, unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order.

13. **Modification of Decree: Child Custody.** If trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement.

14. **Child Custody: Child Support: Rules of the Supreme Court.** Where parties exercise joint physical custody, the trial court must use the joint custody worksheet of the child support guidelines to calculate support.

15. **Child Custody: Words and Phrases.** Joint physical custody is generally defined as joint responsibility for minor day-to-day decisions and the exertion of continuous physical custody by both parents over a child for significant time periods.

16. **Appeal and Error.** Generally, a party cannot complain of error which the party has invited the court to commit.

17. **Divorce: Minors: Stipulations.** Parties in a proceeding to dissolve a marriage cannot control the disposition of matters pertaining to minor children by agreement.

18. **Divorce: Modification of Decree: Child Support.** The paramount concern and question in determining child support, whether in the initial marital dissolution action or in the proceedings for modification of decree, is the best interests of the child.

19. **Child Support.** In determining whether to order retroactive support, a court must consider the parties' status, character, situation, and attendant circumstances. As part of that consideration, the court must consider whether the obligated party has the ability to pay the lump-sum amount of a retroactive award.

20. **Modification of Decree: Child Support: Time.** Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification.

21. **Child Support: Child Custody.** In the determination of child support, the children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay.

22. **Taxation: Child Support: Alimony: Child Custody.** Because a tax dependency exemption is an economic benefit nearly identical in nature to an award of child support or alimony, a trial court may exercise its equitable powers to allocate dependency exemptions between the custodial and noncustodial parent.

23. **Taxation: Child Custody: Presumptions.** Although a custodial parent is presumptively entitled to a tax dependency exemption, a trial court may use its equitable powers to allocate the exemption to a noncustodial parent if the situation of the parties so requires.

24. **Attorney Fees.** Attorney fees are recoverable in Nebraska only when provided for by law or allowed by custom.

25. **Attorney Fees: Child Support.** Attorney fees and costs are allowed in child support cases brought by a child's mother, father, guardian or next friend, the county attorney, or other authorized attorney.

26. **Attorney Fees.** The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case.

27. **Attorney Fees: Courts.** Trial courts and appellate courts are equally regarded as experts at determining the value of legal services.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Avis R. Andrews for appellant.

Ronald E. Frank and Mary M. Schott, of Sodoro, Daly & Sodoro, P.C., for appellee.

Julie Fowler, of Child Support Enforcement Office, for intervenor-appellee.

Inbody, Chief Judge, and Irwin and Riedmann, Judges.

Riedmann, Judge.

## I. INTRODUCTION

Del McDonald appeals from the decision of the district court for Douglas County modifying his child support obligation, awarding attorney fees to his former wife, and denying his request for custody modification. We determine that the district court did not abuse its discretion in refusing to modify child custody, in modifying Del's child support obligation, or in awarding attorney fees. Accordingly, we affirm the trial court's decision.

## II. BACKGROUND

Del and Coleen Spencer, formerly known as Coleen McDonald, married in March 1999 and divorced in July 2009.

Two children were born during the marriage—a son born in 1999 and a daughter born in 2002.

In the original divorce decree, the court awarded Coleen sole legal and physical custody of the parties' two children, subject to Del's parenting time. Del's parenting time consisted of alternating weekends, Wednesday nights, rotating holidays, and extended time during the summer. Del's parenting rights also included a right of first refusal when Coleen worked overnight.

To facilitate their shared parenting responsibilities, the parenting plan established rules for Del and Coleen to aid them in communicating. The rules eliminated face-to-face interaction during custody exchanges, established that the parties would communicate professionally through e-mail or voicemail, and ordered the parties to sit apart from each other at school activities.

In addition to sole custody, the decree also awarded Coleen $69 per month in child support. The decree ordered Coleen to maintain health and medical insurance for the children unless it was available to Del at a lower rate. Del's child support obligations were calculated based on his status as a full-time student with minimal income.

About a year after the decree was entered, Del obtained full-time employment as a respiratory therapist at a Bellevue medical center and occasionally worked additional shifts at a hospital in Blair. Because Del's income increased, the State of Nebraska intervened in February 2011 to ask the court to recalculate Del's child support obligation. Del filed an answer and counterclaim alleging that there had been a material change in circumstances which warranted an award of full custody to him. He based his modification request upon contact that the children had with Coleen's then boyfriend, who Del claimed had a history of domestic abuse and who transported the children while he was consuming alcohol. He further claimed that Coleen was frustrating his relationship with the children by refusing telephone contact and denying him the right of first refusal to care for the children when Coleen was at work.

At trial, the parties addressed both child support and custody issues. To help determine the proper amount of child support, both parties submitted proposed calculations to the court. The State calculated Del's income as $24 per hour full time and Coleen's income as $23.67 per hour full time. Both parties stipulated to the exhibits containing the income calculations. Both parties showed they were providing the children with health insurance. The evidence showed that Del's health insurance premium is slightly lower, but Coleen testified that her insurance does not require her to make any copayments. The parties submitted exhibits as evidence of their income, and they stipulated to all of the exhibits. The stipulated exhibits included the parties' proposed child support calculations (all of which used the same income for the parties), tax returns, and pay stubs.

With respect to custody, at trial, Del requested the court to award him joint custody of the children on an alternating weekly basis, despite the request in his counterclaim that he be awarded "full custody." Under his proposed custody plan, the children would stay in their current school and he would move closer to their current residence. In support of his request, Del stated that he is involved in the children's lives: he attends school activities and exercises his parenting time. Del argued that a joint custody plan was warranted by material changes in circumstances. Specifically, he argued that circumstances have changed, because his work schedule has allowed him more time to parent, Coleen has prevented him from exercising the right of first refusal the way the parties envisioned at the time of the original decree, Coleen's new husband has driven the children while having open containers of alcohol in his car, and Coleen has informed the children that Del does not pay child support.

Del and Coleen's son testified that he did not want the custody schedule to change. Their daughter did not testify. Both parties admitted that they did not have a cordial relationship.

The trial court addressed the issues of custody, child support, health insurance, tax dependency exemptions, and attorney fees. The trial court determined that although no material

change supported a change in custody, Del's new employment status was a material change that supported increasing child support. The trial court increased Del's child support from $69 per month to $982 per month. It awarded the support retroactively from March 2011, resulting in $14,608 in past support. Although Del's income increased in June 2010, the State did not move to modify child support until February 2011; accordingly, the trial court could not award retroactive support until March 2011.

While increasing Del's support, the court determined that Coleen should continue to provide health insurance for the children. Although Coleen's premium was slightly more expensive than Del's, the court determined her plan was more economical because it did not require any copayments. Finally, the court determined that each parent could claim one child for tax exemption purposes but required Del to fulfill his child support obligation in order to claim the exemption.

The trial court also found that Del should have been paying an increased amount of child support since June 2010 and that Coleen incurred legal costs to prove this increase. The court noted that although the attorney fee statements did not distinguish how much of the fee was attributable to the claim for increased child support, a significant portion of the bill was devoted to that issue. Accordingly, the trial court required Del to pay Coleen $2,000 of her $5,046.50 legal bill.

Del timely appealed.

### III. ASSIGNMENTS OF ERROR

Del argues on appeal, condensed, renumbered, and restated, that the trial court erred in (1) failing to modify Coleen's award of sole legal and physical custody, (2) modifying and calculating child support, (3) ordering support to be retroactive, (4) making the tax dependency exemption based on being current on support, and (5) awarding attorney fees.

### IV. STANDARD OF REVIEW

[1-3] Generally, issues involving the modification of a divorce decree, parenting time, and the amount of child support are initially entrusted to the discretion of the district court,

whose determinations in these matters are reviewed de novo on the record for an abuse of discretion. See *Boamah-Wiafe v. Rashleigh*, 9 Neb. App. 503, 614 N.W.2d 778 (2000). See, also, *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009). The trial court's discretion to award child support extends to its determination that the child support award should be retroactive. See *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005). An appellate court also reviews a trial court's award of attorney fees for an abuse of discretion. See *Boamah-Wiafe v. Rashleigh, supra*.

[4] An abuse of discretion occurs when a trial court acts or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives the litigant of a substantial right or just result. See *Coffey v. Coffey*, 11 Neb. App. 788, 661 N.W.2d 327 (2003).

## V. ANALYSIS

### 1. CUSTODY MODIFICATION

Del argues that the trial court abused its discretion in failing to modify the custody decree. In particular, Del argues that the trial court should have awarded him joint custody, increased parenting time, or the right of first refusal whenever Coleen is at work. We disagree.

[5-7] Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id*. Changes in circumstances which were within the contemplation of the parties at the time of the decree are not material changes in circumstances for purposes of modifying a divorce decree. See *Desjardins v. Desjardins*, 239 Neb. 878, 479 N.W.2d 451 (1992).

[8] Prior to modification, two steps of proof must be taken by the moving party. First, the moving party must show a material change in circumstances that affects the best interests

of the child. Second, the moving party must prove that changing the child's custody is in the child's best interests. See *Adams v. Adams, supra.*

In his counterclaim, Del claimed that Coleen has attempted to damage the children's relationship with him, frustrated his ability to have contact with them, and prevented him from exercising the right of first refusal contemplated in the initial decree, and that contact with Coleen's new husband has harmed the children. Del argued that these changes constitute a material change in circumstances.

At trial, Del testified that Coleen's husband had driven the children while having open containers of alcohol in his car and that Coleen had encroached on Del's parenting time by scheduling the children's activities during that time and did not allow him to make up all of the missed time. He also testified that his regular job allows him to have more time with his children.

The trial court determined that there was not a material change in circumstances. On a de novo review of the record, we agree. Although Del presented numerous allegations in his counterclaim, his argument is more limited on appeal. In his brief, Del claims that a material change in circumstances exists, because Coleen has "abuse[d her] power" and shut him out of the children's lives, Del has a flexible schedule and time to parent, and Del has not been able to exercise as much parenting time as the original decree contemplated. Brief for appellant at 24.

We address the arguments Del presented on appeal in turn.

Del argues that Coleen has marginalized his ability to parent by failing to communicate with him and that this failure to communicate places an "inordinate amount of control" in her hands. *Id.* Although we recognize that the parties' strained relationship necessarily makes parenting difficult, there is no evidence that their relationship has deteriorated from the time of the original divorce decree. The fact that Del and Coleen cannot get along with each other is not a new development; the original divorce decree recognized this when it ordered e-mail communication and segregated seating at the children's

activities. Del did not present persuasive evidence of a material change in the parties' relationship.

Similarly, Del did not present persuasive evidence that his new work schedule was a development not contemplated at the time of the divorce decree. At the time of the divorce decree, Del was a full-time student. The evidence shows that at the time of the divorce, Del was enrolled in a 2-year respiratory therapist program. Given the limited nature of the program, the parties certainly contemplated Del's completion of the program at the time of the divorce. Del's graduation from the program and acceptance of employment constitute a development that was certainly expected at the time of the divorce. See *McElyea v. McElyea*, No. A-09-716, 2010 WL 4237938 (Neb. App. Jan. 5, 2010) (selected for posting to court Web site).

Even if the parties had not contemplated the current situation, however, the evidence does not show that Del is currently more available to parent. The record does not reveal Del's schooling schedule at the time of the divorce decree. Del testified, however, that he should not have been required to reimburse Coleen for daycare during that time period, because he could have watched the children every day. Given Del's testimony and the lack of evidence regarding his schedule at the time of the decree, there is no basis to compare his parenting availability. Accordingly, the record presented to this court does not demonstrate a material change in circumstances based on the changes in Del's schedule.

Finally, Coleen's changed work schedule does not constitute a material change in circumstances. The original divorce decree awards Del a right of first refusal while Coleen worked the night shift. The parties did not provide evidence as to why they limited Del's right to time periods when Coleen worked at night as opposed to simply providing Del a right of first refusal when Coleen worked. While Coleen's change in work schedule may have prevented Del from exercising the right of first refusal, Del did not prove that the intention of the right was simply to provide him with increased parenting time and therefore did not show that Coleen's change has frustrated the intention of the provision in the decree. Accordingly, we do not

find a material change in circumstances based upon Coleen's changed schedule.

The evidence reveals that both parents are capable of providing their children with a stable home environment. They both love their children and support them academically, financially, and emotionally. There was no evidence that Coleen was unfit or that the children were not thriving in her care. Therefore, upon our de novo review of the record, we agree that there is not sufficient evidence to demonstrate that a material change in circumstances has occurred. Absent a material change in circumstances, Del is not entitled to a modification of custody.

[9] On appeal, Del argues that the trial court should have awarded him additional parenting time. Aside from requesting joint custody, however, Del did not request additional parenting time in his counterclaim or at trial. An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Scurlocke v. Hansen*, 268 Neb. 548, 684 N.W.2d 565 (2004). Because the issue was not presented to the trial court, we do not consider it on appeal.

## 2. Child Support Modification

Del argues that the trial court erred in modifying child support and in its child support calculation. Del argues that the support was incorrectly calculated, because the trial court used the wrong worksheet and income level, improperly gave Coleen credit for providing health insurance, and should have awarded a deviation. We disagree.

### (a) Modification

[10] A parent seeking to modify a child support award must show a material change in circumstances, including changes in the financial position of the parent obligated to pay support. See *Sabatka v. Sabatka*, 245 Neb. 109, 511 N.W.2d 107 (1994). Del's financial position changed drastically from the time of the divorce decree. At the time of the decree, Del was an unemployed student with minimal income. At the time of the request for modification, he worked full time as a respiratory therapist and earned a stable salary. The trial court did not err

in finding a material change supported modifying Del's child support award.

### (b) Sole Custody Worksheet and Deviation

Del argues that the trial court abused its discretion in using the sole custody worksheet, because the parties are effectively exercising joint custody. Del notes that he has custody of the children 163 to 166 days per year, or 44 to 45 percent of the time. Alternatively, Del argues that the trial court abused its discretion in failing to deviate from the award produced using the joint custody worksheet because of Del's substantial parenting time.

[11,12] Generally, child support payments should be set according to the guidelines established pursuant to Neb. Rev. Stat. § 42-364.16 (Reissue 2008). *Hajenga v. Hajenga*, 257 Neb. 841, 601 N.W.2d 528 (1999). Although the guidelines are not to be applied with blind rigidity, child support shall be established in accordance with the guidelines, unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order. § 42-364.16; *Pool v. Pool*, 9 Neb. App. 453, 613 N.W.2d 819 (2000).

[13,14] Neb. Ct. R. § 4-212 (rev. 2011) establishes a presumption of joint support when the trial court orders joint custody and each party's parenting time exceeds 142 days per year. If trial evidence establishes a joint physical custody arrangement, courts will so construe it, regardless of how prior decrees or court orders have characterized the arrangement. *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999). Where parties exercise joint physical custody, the trial court must use the joint custody worksheet to calculate support. See *Pool v. Pool, supra*.

[15] Joint physical custody is generally defined as "joint responsibility for minor day-to-day decisions and the exertion of continuous physical custody by both parents over a child for significant time periods." *Id*. at 457, 613 N.W.2d at 823. In *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304

(2013), we examined the line of Nebraska cases defining joint physical custody. (These cases are: *Elsome v. Elsome, supra*; *Pool v. Pool, supra*; *Heesacker v. Heesacker*, 262 Neb. 179, 629 N.W.2d 558 (2001); and *Drew on behalf of Reed v. Reed*, 16 Neb. App. 905, 755 N.W.2d 420 (2008).) In *Hill*, we noted that Nebraska cases distinguish between a continuous alternating custody schedule and a more "'typical'" weekend, holiday, and summer visitation schedule. 20 Neb. App. at 535, 827 N.W.2d at 311. We explained that "the *amount* of time the children spend with each parent is less important than *how* the time is allocated when determining whether joint physical custody exists." *Id*. Part of the reason for this distinction is that the way parenting time is allocated relates to the expenses associated with that responsibility. See *Heesacker v. Heesacker, supra*. In *Heesacker*, for example, the court determined that a father's typical visitation schedule did not give rise to the same expenses as the mother's day-to-day schedule even though the father parented the children 35 percent of the time.

Del has custody of the children 163 to 166 days per year, which raises the presumption that he exercises joint custody with Coleen. His custody schedule, however, consists of alternating weekends, one weekday night, alternating holidays, and an extended time period in the summer. He did not testify that this schedule caused him to expend more money than any other noncustodial parent. His parenting time constitutes a typical visitation schedule. See *Pool v. Pool, supra*. Because his allocation of parenting time constitutes a typical visitation schedule, Coleen rebutted the presumption of joint custody. Accordingly, there was no reason for the trial court to use the joint support worksheet or to deviate from the child support guidelines based on the visitation schedule. The trial court did not abuse its discretion by failing to do so.

### (c) Income Calculation

Del argues that the trial court erred in using an inflated income figure in calculating his child support obligation. Del argues that the evidence shows Del's monthly income as $3,692.52 and Coleen's as $3,744, both of which are lower

than the income amounts used by the trial court to calculate support. While we agree with Del's analysis of what the record reflects, we are mindful of the fact that the worksheets Del offered at trial contained the same gross income amounts contained in the State's proffered worksheets and used by the court in its calculations. Del claims the court erred in utilizing the very amounts that he suggested the court use.

[16-18] Generally, a party cannot complain of error which the party has invited the court to commit. *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). However, parties in a proceeding to dissolve a marriage cannot control the disposition of matters pertaining to minor children by agreement. *Lawson v. Pass*, 10 Neb. App. 510, 633 N.W.2d 129 (2001). The paramount concern and question in determining child support, whether in the initial marital dissolution action or in the proceedings for modification of decree, is the best interests of the child. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

Since Del utilized these same amounts on the worksheets he offered as evidence, and the use of these amounts does not detrimentally affect the children, we cannot say the court abused its discretion in relying upon these amounts to calculate child support.

### (d) Health Insurance

Del argues that the trial court erred in failing to give him credit for providing the children health insurance and in giving Coleen credit for providing health insurance. The divorce decree ordered Coleen to provide the children health insurance unless Del could do so more economically. Coleen began providing the children with health insurance. Later, Del had the option to provide the children with health insurance that had a slightly lower premium rate and did so. Coleen maintained health insurance for the children, however, because her plan did not require the parties to make any copayments for health care.

The trial court determined that Coleen's insurance was more economical and ordered her to continue providing it to the children. Consequently, Del is not required to provide the

children with health insurance. Because Coleen was ordered to provide the children health insurance and Del was not, the trial court did not err in giving Coleen credit for providing the insurance and in failing to give credit to Del.

### 3. AWARDING RETROACTIVE SUPPORT

Del argues that the trial court erred in requiring him to pay retroactive child support, because he has been involved in raising the children, is beginning a new career, and cannot afford to pay such a large arrearage. We disagree.

[19-21] In determining whether to order retroactive support, a court must consider the parties' status, character, situation, and attendant circumstances. See *Cooper v. Cooper*, 8 Neb. App. 532, 598 N.W.2d 474 (1999). As part of that consideration, the court must consider whether the obligated party has the ability to pay the lump-sum amount of a retroactive award. See *Wilkins v. Wilkins*, 269 Neb. 937, 697 N.W.2d 280 (2005). Absent equities to the contrary, modification of a child support order should be applied retroactively to the first day of the month following the filing date of the application for modification. *Emery v. Moffett*, 269 Neb. 867, 697 N.W.2d 249 (2005). The children and the custodial parent should not be penalized by delay in the legal process, nor should the noncustodial parent gratuitously benefit from such delay. *Pursley v. Pursley*, 261 Neb. 478, 623 N.W.2d 651 (2001).

In this case, Del became employed in June 2010 and began earning a substantial salary. During this time, he was paying only $69 a month in child support. Despite his increased salary, he continued to pay only $69 in support without interference until February 2011, when the State petitioned the court to increase his child support obligation. The trial court awarded child support retroactively from March 2011, the first month after the filing of the modification application. This retroactive award keeps with the principle that a noncustodial parent should not gratuitously benefit from delays in the legal system when he or she should, and is able to, pay an increased amount of child support. Del did not explain why it would be inequitable for him to pay retroactive support, nor did

he explain why paying the lump sum would be a hardship. Accordingly, the trial court did not err in ordering the child support be awarded retroactively.

### 4. Tax Exemption

Del argues that the trial court erred in making his tax dependency exemption dependent on his being current in paying child support. We disagree.

[22,23] The federal government allows taxpayers to exclude from their income an exemption amount for each individual who is a dependent of the taxpayer in the taxable year. I.R.C. § 151(c) (2006). Because a tax dependency exemption is an economic benefit nearly identical in nature to an award of child support or alimony, a trial court may exercise its equitable powers to allocate dependency exemptions between the custodial and noncustodial parent. See *Prochaska v. Proschaka*, 6 Neb. App. 302, 573 N.W.2d 777 (1998). Although a custodial parent is presumptively entitled to a tax dependency exemption, a trial court may use its equitable powers to allocate the exemption to a noncustodial parent if the situation of the parties so requires. See, I.R.C. § 152(c)(4)(B)(i) (2006); *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004). If the situation of the parties does not require allocating a tax dependency exemption to the noncustodial parent, however, a trial court is not required to allocate it. For example, in *State ex rel. Wells v. Wells*, No. A-10-1161, 2011 WL 3689142 (Neb. App. Aug. 23, 2011) (selected for posting to court Web site), we found that the trial court abused its discretion in awarding a father a tax dependency exemption when he was paying a relatively low amount of child support.

The federal government grants a dependency exemption to a parent who provides support to a dependent minor. If Del is not current on his child support, then he is not supporting the minor in the way the court deemed necessary. Given the purpose of the tax dependency exemption and the trial court's discretion in awarding child support and tax exemptions, we cannot say that it was an abuse of discretion for the trial court

to order that Del be current in paying child support in order to claim a tax dependency exemption.

### 5. Attorney Fees

Del argues that the trial court abused its discretion in awarding Coleen attorney fees, because the parties have similar incomes and Coleen refused to cooperate with Del. We disagree.

[24-27] Attorney fees are recoverable in Nebraska only when provided for by law or allowed by custom. *Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999). Attorney fees and costs are allowed in child support cases brought by a child's mother, father, guardian or next friend, the county attorney, or other authorized attorney. See *id*. The award of attorney fees depends on multiple factors that include the nature of the case, the services performed and results obtained, the earning capacity of the parties, the length of time required for preparation and presentation of the case, customary charges of the bar, and general equities of the case. *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008). Trial courts and appellate courts are equally regarded as experts at determining the value of legal services. See *In re Interest of Antone C. et al.*, 12 Neb. App. 152, 669 N.W.2d 69 (2003). Because the trial court is in a better position to evaluate the award of attorney fees, however, an appellate court interferes only when the award is excessive or insufficient. See *id*. Our de novo review of the record did not reveal an abuse of discretion in ordering Del to pay $2,000 in attorney fees.

### VI. CONCLUSION

We determine that the trial court did not abuse its discretion in failing to modify custody, in its determination that Del's child support obligation should be modified, or in awarding attorney fees. Accordingly, we affirm the trial court's decision.

Affirmed.