750 N.W.2d 377 (2008)
16 Neb. App. 706
Renee K. LUCERO, Appellant,
v.
Ivan M. LUCERO, Appellee.
No. A-07-914.
Court of Appeals of Nebraska.
May 27, 2008.
*380 Robert M. Brenner, of Robert M. Brenner Law Office, Gering, for appellant.
Leonard G. Tabor, of Leonard G. Tabor Law Office, Gering, for appellee.
SIEVERS, MOORE, and CASSEL, Judges.
*379 SIEVERS, Judge.
Renee K. Lucero appeals the decision of the district court for Garden County, Nebraska, modifying child custody, the parties' respective child support obligations, and the visitation provisions. The district court (1) ordered Renee to pay *381 child support in the amount of $439 per month retroactive to June 1, 2007, and (2) retroactively terminated Ivan M. Lucero's child support obligation as of January 31, 2007. We have determined that the matter should be submitted for decision without oral argument pursuant to our authority under Neb. Ct. R. of Prac. 11B(1) (rev. 2006).

FACTUAL AND PROCEDURAL BACKGROUND
Initially, to avoid any confusion, we point out an error by the court reporter. The title page on the testimony in the bill of exceptions recites that the proceedings were had "on August 6, 2006." It is clear from everything else in the proceedings and our record that the trial occurred August 6, 2007.
Renee and Ivan were married at one time and lived in Colorado. The parties have a son, Jerad, born August 15, 1993. Renee and Ivan were divorced in Colorado, and although the date is unclear from the record, we know the decree was entered either in 1999 or 2002. Sometime after the divorce, Renee and Jerad moved to Nebraska and Ivan moved to Florida. And while the divorce decree is not in our record, it is clear that Renee had physical custody of Jerad.
Renee filed a motion to modify the parties' decree pertaining to child support and visitation issues in the district court for Garden County. In an order filed on November 29, 2004, the district court stated: "NOW on this 14th day of September, 2004, [this] matter comes on by stipulation between the parties concerning child visitation, child support and transportation issues." Based on the oral stipulation of the parties, the district court awarded Ivan 2 months of summer visitation with Jerad, awarded Ivan visitation for one-half of Jerad's Christmas break from school, ordered the parties to each pay half of Jerad's transportation costs for summer and Christmas visitations, and ordered Ivan to pay $524 per month in child support beginning September 1, 2004. The district court stated, "This order shall supersede the previous Colorado order."
On January 30, 2007, Ivan filed a motion to modify the decree, alleging a material change of circumstances. Ivan alleged that (1) the original dissolution decree was entered in the District Court for Jefferson County, Colorado, in 2002 and thereafter said action was transferred to Nebraska; (2) on September 14, 2004, an order was entered by the Garden County District Court which in part ordered Ivan to pay $524 per month in child support commencing September 1, 2004; and (3) there was a material change of circumstances because Jerad was now living with Ivan in Jacksonville, Florida, a move that Renee agreed to, and Jerad started school in Jacksonville on January 8, 2007. Ivan asked the district court to modify the decree previously entered by (1) granting him custody of Jerad; (2) terminating Ivan's child support as of January 1, 2007; (3) determining the proper amount of child support to be paid by Renee; (4) determining the appropriate percentage of Jerad's medical expenses to be paid by each party; and (5) setting a specific visitation schedule for Renee. On May 11, 2007, Ivan filed an amended motion for modification further alleging that Jerad lived with Ivan in Jacksonville for all of 2007, and he specifically asked the district court to credit him for the child support payments he had been making since January 1, 2007.
Renee entered her voluntary appearance on February 5, 2007. On May 22, she filed her response to Ivan's amended motion for modification and her own cross-motion for modification on visitation. In her answer, Renee (1) admitted that Jerad had been *382 living in Jacksonville "since part of January, 2007 to the present date," but alleged that Jerad would return to Renee on June 2 and remain with her until at least August 4; (2) alleged that a deviation in the award of child support should be granted because the costs of transportation for contact and visitation with Jerad are now greater and that the costs are within "Section J," the parenting time adjustments of the Nebraska Child Support Guidelines (Guidelines)  she also alleged that the child support should be reduced up to 80 percent during summer visitations; and (3) alleged that setting her child support obligation to commence on January 1, 2007, precedes the filing of the motion and voluntary appearance of Renee and thus would be prejudicial and unjust to her and affect her ability to support another child who needs her support. In her cross-motion on visitation, Renee alleged that given the fact that Jerad may or will return to Ivan, the court must set specific visitation periods for Renee because past issues and problems have occurred which a specific order would address.
In an order filed on August 14, 2007, the district court noted that the parties stipulated at the beginning of trial that (1) Jerad had been living with Ivan in Jacksonville since January 8; (2) the parties should be awarded joint legal custody of Jerad, with Ivan having physical custody; (3) Jerad's residence will be in the State of Florida; (4) visitation should occur during the "Christmas/Winter break" from school and during the summer break from school; (5) Jerad should be with Renee for the majority of the summer; and (6) the cost of transportation should be divided equally between the parties. Therefore, the court ordered that the parties were to have joint legal custody of Jerad with Ivan having physical custody. The district court set a specific visitation schedule for Renee which included summer visitation to "begin one week after the last day of school and is to end one week prior to the commencement of school," 10 days during the "Christmas/Winter break," and unlimited visitation during any time period Renee is visiting in Florida. The district court ordered that the cost of Jerad's round trip airline tickets for visitations with Renee are to be divided equally between the parties, with Renee paying for such costs up front and Ivan reimbursing Renee for one-half of the cost within 30 days of the receipt of the confirmation of flight and the cost thereof from Renee.
The district court further ordered that (1) Ivan's child support obligation was retroactively terminated as of January 31, 2007; (2) any amount paid by Ivan after January 31 is to be credited to any arrears and accrued interest that Ivan owes for child support and then any remaining overpayment "shall ... constitute a judgment against [Renee], together with interest thereon at the rate of ___ per cent (%) per annum" (the blank was not filled in by the district court); (3) until such time as the judgment is paid in full, Renee is responsible for all of the transportation costs incurred for visitation, that is one-half of the cost of the airline ticket "shall be credited against the unpaid judgment and interest thereon"; (4) Renee's child support obligation is $439 per month commencing June 1; and (5) in the event that Renee has Jerad for more than 30 consecutive days in the summer, her child support for June and July should be abated by one-half. The district court attached two child support worksheets. The first worksheet attached by the district court was a one-page compilation of standard worksheets 1 (basic child support calculation), 4 (number of children calculation), and 5 (deviations worksheet) of the Guidelines. The second worksheet attached by the district *383 court was standard worksheet 3, a calculation for joint physical custody. We note that neither child support worksheet reflects the $439 figure as determined by the district court. Renee timely appeals the district court's order.

ASSIGNMENTS OF ERROR
Renee has properly assigned errors which we will set forth at the beginning of each separate topical section in our analysis section of the opinion.

STANDARD OF REVIEW
An appellate court reviews modifications of child support de novo on the record and will affirm the judgment of the trial court absent an abuse of discretion. Pool v. Pool, 9 Neb.App. 453, 613 N.W.2d 819 (2000).

ANALYSIS

Child Support Calculation.
Renee argues that the district court erred in calculating her child support payment of $439 per month by its using incorrect income figures in the basic worksheet attached to the order and by its not taking into account established deviations and other deductions. Renee further argues that the district court's decision is unclear as to whether the district court applied worksheet 3 and thus it erred in either (a) not applying worksheet 3, which both parties stipulated would be used in calculating Renee's child support, or (b) applying worksheet 3, but not applying the correct number of days the child spends with each parent.
The district court attached two child support worksheets to its order, but did not specifically adopt either, although as we have said many times, the trial courts are obligated to do so. The first worksheet attached by the district court was a one-page compilation of standard worksheets 1 (basic child support calculation), 4 (number of children calculation), and 5 (deviations worksheet). The second worksheet attached by the district court was standard worksheet 3, a calculation for joint physical custody. We note that the first worksheet was for 3 children, even though the parties have only 1 child. And worksheet 3 showed that each party had the child for 183 days per year, even though Renee had Jerad only during his Christmas and summer vacation, and thus that worksheet 3 is not accurate. Neither child support worksheet reflects the $439 figure as ordered by the district court.
Renee is correct in that both parties agreed that worksheet 3, a calculation for joint physical custody, would be used. However, a stipulation for child support is not binding on the court. See Bevins v. Gettman, 13 Neb.App. 555, 697 N.W.2d 698 (2005). Paragraph C of the Guidelines states in part:
The child support guidelines shall be applied as a rebuttable presumption. All orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied. All stipulated agreements for child support must be reviewed against the guidelines and if a deviation exists and is approved by the court, specific findings giving the reason for the deviation must be made.

(Emphasis supplied.) Paragraph L of the Guidelines, regarding joint physical custody, states in part:
When a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year, it is a rebuttable presumption that support shall be calculated using worksheet *384 3. When a specific provision for joint physical custody is ordered and one party's parenting time is 109 to 142 days per year, the use of worksheet 3 to calculate support is at the discretion of the court.
In its order, the district court specifically stated that "[t]here is no joint physical custody of the child." If Renee has Jerad with her in Nebraska for the maximum time allowed by the district court, the time she will have Jerad is right at 90 days per year. Therefore, using worksheet 3 to calculate the parties' child support obligation would not be in accordance with paragraph L of the Guidelines and the court did not abuse its discretion in not using worksheet 3. To avoid the cost and delay to the parties involved in remanding the cause for the district court to adopt a worksheet, we will do our own worksheet 1, the basic child support calculation. That said, counsel might read the concurrence in Moore v. Bauer, 11 Neb.App. 572, 657 N.W.2d 25 (2003) (suggesting that counsel has an obligation to ensure that worksheet has been adopted before filing appeal).
Renee's monthly income is not in dispute, because the parties stipulated that she earns $2,744 gross per month as a salaried employee. However, Ivan's income is somewhat disputed. Ivan is a "float driver" for a shipping company, meaning he covers for people who are sick or who do not come to work. Ivan earns $20.56 per hour and is guaranteed a 35-hour workweek, and after 40 hours he is paid on an overtime basis. The company's overtime is paid on a "bid only basis" based on seniority of employment and is not always available. Ivan testified that the availability of overtime fluctuates. If the company is fully staffed, there is less overtime. During the peak season, such as Christmastime, employees are required to come to work, so there is no overtime available for Ivan because there are no shifts to cover. Therefore, Ivan testified that during the winter months, he works only a 35-hour week. When asked on cross-examination if he bids on overtime every week, Ivan responded, "Absolutely." Ivan testified that the company is his only source of income  he does not have stocks, bonds, or investments. In determining Ivan's income, the district court said, "[Ivan's] income was obtained by adding the gross income from [his] 2005 W-2 and 2006 W-2 and dividing by half. The resulting figure was divided by 12 to arrive at the monthly income. This includes [Ivan's] overtime as it has historically been earned." Thus, the district court used "income averaging" to determine Ivan's monthly income.
Ivan's W-2's show he earned $44,521.34 in Social Security wages in 2005 and $50,964.68 in Social Security wages in 2006. Also in evidence is an interoffice memorandum from his employer dated March 16, 2007, which showed a breakdown of Ivan's 2006 earnings. In 2006, Ivan earned $35,352.55 base pay, $10,810.10 overtime, and $7,233.28 in "other" pay (including sick pay, holiday pay, vacation, personal, and profit sharing). However, it does not appear that the "other" pay is reasonably available cash which will support Jerad, and there fore, we do not consider such amount. See Simpson v. Simpson, 275 Neb. 152, 744 N.W.2d 710 (2008) (expatriate income not considered "reasonably available" for child support payments). The interoffice memorandum also showed that as of March 16, 2007, Ivan's 2007 earnings included $7,401.66 base pay and $789.69 overtime. However, Ivan's earnings from January 1 to March 16, 2007, are from winter months when, as Ivan testified, there is limited overtime. For that reason, we find Ivan's "year-to-date" earnings for 2007 are not a reliable *385 predictor of what his final 2007 wages would be, given that overtime is obviously a substantial part of his pay. Moreover, the W-2's and the information on the interoffice memorandum do not match up, therefore we work with the wages shown on the W-2's.
In Peter v. Peter, 262 Neb. 1017, 637 N.W.2d 865 (2002), the Nebraska Supreme Court found that where the obligor's annual earnings show a clear pattern of consistently increasing income, current earnings, not income averaging, should be used in calculating the child support obligation. However, reference to worksheet 1 of the Guidelines reveals that "[i]n the event of substantial fluctuations of annual earnings of either party during the immediate past 3 years, the income may be averaged to determine the percent contribution of each parent." We have evidence only of Ivan's income from 2005 and 2006 via the W-2's for those years, and from such evidence it does not appear that Ivan's income has "substantially fluctuated," but, rather, the evidence shows that Ivan's income is increasing when compared year over year. Thus, Ivan's current earnings from 2006 will be used to calculate his child support obligation. Therefore, based on his 2006 W-2, we find that Ivan's gross income is $50,964.68 per year, or $4,247.06 per month.
We find that the Renee's child support obligation shall be $446.69 per month. We have attached our child support worksheet calculation using Renee's earnings of $2,744 per month and Ivan's earnings of $4,247.06 per month. In our child support calculation, we gave Ivan a deduction of $65.63 per month for his retirement contributions which were supported by the evidence in our record. The district court found that in the event that Renee has Jerad for more than 30 consecutive days in the summer, her child support for June and July should be abated by one-half. Paragraph J of the Guidelines provides that when there are visitation or parenting time periods of 28 days or more in any 90-day period, support payments may be reduced by up to 80 percent, but that such determination is made using the trial court's discretion. Although Renee will undoubtedly incur additional expenses when Jared is with her, Ivan's costs in maintaining Jared's permanent home will not disappear. Therefore, we cannot say that the trial court abused its discretion in its selection of a 50-percent abatement rather than an 80-percent abatement of Renee's support obligation.
We do not give either parent a deduction for health insurance premiums paid to cover Jerad, because neither party submitted sufficient evidence of the increased cost of such coverage. The parent claiming a deduction for health insurance must show that he or she has incurred an increased cost to maintain the coverage for the children over what it would cost to insure himself or herself. Noonan v. Noonan, 261 Neb. 552, 624 N.W.2d 314 (2001). See, also, paragraph E of the Guidelines. We did not give Renee her requested deduction for retirement savings contributions because there was not sufficient evidence in the record to support such. Finally, we did not give Renee her requested deviation for travel costs associated with Jerad's visitation costs. As will be discussed below, each party is essentially responsible for one-half of Jerad's travel costs, and therefore, no deviation is warranted.

Retroactivity of Child Support.
Renee argues that the district court erred in (1) determining Renee should retroactively commence child support payment on June 1, 2007, and (2) retroactively terminating Ivan's obligation to pay child *386 support as of January 31, 2007, and ordering Renee to pay back child support she had received after such date.
The law in Nebraska is that "[a]bsent equities to the contrary, the modification of child support orders should be applied retroactively to the first day of the month following the filing date of the application for modification." Theisen v. Theisen, 14 Neb.App. 441, 451, 708 N.W.2d 847, 855 (2006). Ivan filed his motion for modification on January 30, 2007, requesting that his child support be terminated. Therefore, the retroactivity date, if applicable, would be February 1, 2007.
Of additional import for our holding in this matter is Cooper v. Cooper, 8 Neb.App. 532, 538, 598 N.W.2d 474, 478 (1999), which states:
The rule providing that the status, character, and situation of the parties and attendant circumstances should be considered in determining whether to make child support modifications retroactive naturally requires consideration of the obligated party's ability to pay the lump sum that will necessarily result in such a retroactive order. We find no cases in which the ability of the obligated party to pay the retroactively ordered support is discussed, but we think the ability to pay is a paramount factor. We think that in the absence of a showing of bad faith, it is an abuse of discretion for a court to award retroactive child support when the evidence shows the obligated parent does not have the ability to pay the retroactive support and still meet current obligations.
See, also, Wilkins v. Wilkins, 269 Neb. 937, 697 N.W.2d 280 (2005) (applying our standard in Cooper, supra). Thus, we must consider Renee's ability to pay retroactive support.
At the modification hearing, Renee testified that she does not have the ability to pay any retroactive child support the court might order. She testified that her monthly expenses exceed her monthly income and that she has "[a]bout $4.00" in her bank account. Renee also testified that she has been considering filing for bankruptcy and has seen an attorney regarding such. Exhibit 17, which was received into evidence without objection, includes among other things Renee's accounting of her total debt and her monthly expenses, and statements from four different credit card companies. Exhibit 17 shows that Renee's total debt is in excess of $100,000, almost half of which is credit card debt. Exhibit 17 shows that Renee's monthly expenses are approximately $2,880, which is clearly in excess of her $2,744 per month income which was stipulated to by the parties. The credit card statements from April to July 2007 show that Renee is over her credit limit on three of her credit cards, and within $200 of her limit on a fourth card. Her total credit card charges exceed $47,000. At the time of the statements, Renee was 2 months behind on one credit card and 3 months behind on another. And, her minimum payment due on each of two of the four cards exceeded Renee's monthly income. In addition, a third credit card company was threatening to turn over her account for collection.
Clearly, Renee is in severe financial trouble and lacks the funds with which to make a sizeable retroactive child support payment. Therefore, it was an abuse of discretion under the precedent cited above for the district court to award retroactive child support to Ivan when the evidence shows that the obligated parent, Renee, does not have the ability to pay the retroactive support and still meet current *387 obligations. Therefore, we modify the district court's decision to order that Renee's child support shall begin September 1, 2007.
Turning to the matter of the retroactivity of the termination of Ivan's support obligation, the district court entered a judgment against Renee which in effect orders her to pay back any child support she received from Ivan after January 31, 2007, by way of a judgment against Renee in Ivan's favor. The trial court also found that of the money paid for child support after January 31, such would first be credited to Ivan's arrears and accrued interest, which amounted to $724 at the time of the hearing, and the remaining amount of support she got after Jerad moved to Florida would constitute a judgment against Renee. But the court did not specify the amount of such judgment.
Ivan cites Berg v. Berg, 238 Neb. 527, 471 N.W.2d 435 (1991), to support the district court's judgment against Renee. In Berg, the district court credited a father, as against his child support arrearage, for childcare expenses incurred while two of four children for whom he was paying child support were living with him. Finding no abuse of discretion, the Nebraska Supreme Court said that "[t]he district court may, on motion and satisfactory proof that a judgment has been paid or satisfied in whole or in part by the act of the parties thereto, order it discharged and canceled of record, to the extent of the payment or satisfaction." Berg v. Berg, 238 Neb. at 530, 471 N.W.2d at 438. Thus, to the extent that the trial court's order allows credit for child support paid after January 31, 2007, against arrearages for past due support, such is clearly authorized by Berg v. Berg, supra, and to the extent that Ivan's arrearages and accrued interest are deemed paid (which he testified was in the total amount of $724), such order is affirmed.
But the order in this case goes further than Berg. In the instant case, the district court gave Ivan a judgment against Renee for the amounts paid after January 31, 2007, which are over the amount of Ivan's arrearages and interest. Ivan testified that he has been paying $524 per month since Jerad came to live with him in January through the time of trial in early August. His request that his child support obligation be terminated was filed January 30, 2007. The same principles that apply with respect to retroactivity of a new obligation to pay support, i.e., that the obligation can be retroactive to the first day of the month following the filing of a request to modify to impose (or increase) a child support obligation, should, in fairness, generally apply also when the request is to terminate a child support obligation. In this case, this means that Ivan's obligation could be terminated effective February 1. Thus, he paid 8 months at $524 or $4,192 and had an arrearage of $724, meaning that the judgment against Renee, for "overpaid" child support would be $3,468, and while the district court did not enter an amount for such judgment, the evidence shows that such would be $3,468. But, whether such amount should be repaid via a judgment in circumstances such as those present here was not addressed by the Berg court.
Renee argues that the payments she received after January 2007 were hers to keep because the payments vested in her month by month and the law is that the district court cannot forgive accrued child support, which the judgment against her would in effect do. In Maddux v. Maddux, 239 Neb. 239, 475 N.W.2d 524 (1991), the court said that it had repeatedly stated the rule that when a divorce decree provides for the payment of stipulated *388 sums monthly for the support of a minor child or children, such payments become vested in the payee as they accrue and that generally, the courts are without authority to reduce the amounts of such accrued payments. The exception to this rule appears to concern situations in which the payee is equitably estopped from collecting the accrued payments. See, Truman v. Truman, 256 Neb. 628, 591 N.W.2d 81 (1999); Redick v. Redick, 220 Neb. 86, 368 N.W.2d 463 (1985). The Truman decision contains an extensive discussion of the issue, including authority from other jurisdictions, but reveals that exception usually comes into play when the payee seeks recovery of accrued but unpaid payments but is estopped by a representation made to the payor that he no longer has to pay child support, typically followed by the passage of substantial time before the payee attempts to collect, as well as a change of position by the payee as required by the traditional elements of equitable estoppel. While the record here shows that Ivan changed position by supporting Jerad in his Florida home, the record has no evidence of any agreement or representation by Renee that support would end in January or February 2007. And here, not only did the payments accrue between February and August 2007, when the case was heard, but Ivan testified that he made all of the accrued payments. Thus, in this case the payor, Ivan, is seeking the return of payments made to the payee, Renee, rather than Renee seeking unpaid but accrued child support. In short, factually, this case cannot be "force-fitted" into the exception to the vesting rule discussed in Truman.
Therefore, we vacate the judgment which has the effect of modifying or forgiving accrued child support payments. We do so because the Truman exception to the no forgiveness of accrued child support rule does not apply. And while we admit to some discomfort with this result, given that Ivan was following a court order to pay support which had not yet been modified, meaning that he was supporting Jerad while also making monthly child support payments to Renee, it seems to us that we cannot ignore the fact that Ivan could have sought and likely obtained a temporary order upon motion and affidavit, suspending his payments pending the final hearing on his request to terminate child support payments rather than paying them and hoping to get them back from his financially distressed ex-wife. Ivan's child support payments became vested in Renee as they accrued, and equitable estoppel does not apply; therefore, the district court was without authority to order her to repay such monies, because doing so nullifies the rule that Renee's child support vests in her month by month as it accrues and Truman does not apply. Additionally, the evidence shows that Renee lacks the ability to make such payments, see Cooper v. Cooper, 8 Neb.App. 532, 598 N.W.2d 474 (1999). Therefore, for these reasons, we find that the district court abused its discretion in giving Ivan a judgment against Renee for amounts paid after January beyond the credit against his arrearages and interest. Therefore, other than his arrearages and interest being deemed paid, such judgment against Renee is hereby vacated and set aside.

Visitation Travel Costs.
Renee argues that the district court erred in redetermining how the visitation travel costs should be divided. At the beginning of the modification hearing, counsel for both parties stated to the district court what they believed the parties had agreed to. Ivan's counsel stated, "I believe that the parties will agree that they will split the transportation costs equally." And Renee's counsel stated, *389 "The way we done the transportation that's the only change here is [Ivan] would do the Christmas, the to and from tickets and [Renee] has to do the summer, if you follow me, I hope." During direct examination, Ivan agreed that statements by his counsel and Renee's counsel to the court regarding the parties' agreements were correct. And during her direct examination, Renee agreed that she would be paying for Jerad's flight for summer visitation, and Ivan would be paying for the Christmas flight.
The district court ordered that the cost of Jerad's round trip airline tickets for visitations with Renee are to be divided equally between the parties. However, the district court's order stated that Renee is to pay for Jerad's airline ticket up front and then Ivan is to reimburse Renee for one-half of the cost within 30 days of the receipt of the confirmation of flight and the cost thereof from Renee. It is clear from the record that the parties agreed that Ivan would pay for the Christmas visitation transportation costs and that Renee would pay for the summer visitation transportation costs. Such agreement is practical, is even-handed, and puts the responsibility for securing the ticket on the party paying for such ticket. On the other hand, the district court's decision in this regard is cumbersome and puts all of the purchasing burden on Renee  when she may well be without a credit card, given her dire financial circumstances. Therefore, the district court abused its discretion in its determination of how travel costs would be handled. The court should have ordered such travel costs for visitation be divided as the parties agreed, and we therefore modify the district court's order in this regard.

CONCLUSION
We find that Renee's child support obligation shall be $446.69 per month, beginning September 1, 2007. We have attached our child support worksheet calculation using Renee's earnings of $2,744 per month and Ivan's earnings of $4,247.06 per month. And in the event that Renee has Jerad for more than 30 consecutive days in the summer, her child support for June and July should be abated by 50 percent as the district court ordered.
We find that the district court did not abuse its discretion in giving Ivan a credit against any prior child support arrearage and interest by way of the payments he made after February 1, 2007, and such in the amount of $724 are deemed paid. However, the district court was without authority to enter a judgment against Renee for any "overpayment" of child support by Ivan beyond such arrearage and interest, and therefore to such extent the judgment against Renee is hereby vacated and set aside.
We modify the district court's order regarding the division of travel costs for visitation and order that Ivan will pay for the Christmas transportation costs and Renee will pay for the summer transportation costs.
AFFIRMED IN PART AS MODIFIED, AND IN PART VACATED AND SET ASIDE.

 Worksheet I
 BASIC NET INCOME AND SUPPORT CALCULATION
 Mother Father
 Combined
1. Total monthly income from all sources (except payments
received for children of prior marriages and all means-tested
public assistance benefits)[*] 2,744.00 4,247.06

*390
2. Deductions[**]
 a. Taxes[***] 295.35 587.88
 b. PICA 209.92 324.92
 c. Health insurance[****] 0.00 0.00
 d. Retirement 0.00 65.63
 e. Child support previously ordered for other children 0.00 0.00
 f. Regular support for other children 0.00 0.00
 g. Total deductions 505.26 978.41
3. Monthly net income (line 1 minus line 2g) 2,238.74 3,268.65
4. Combined monthly net income 5,507.39
5. Combined annual net income (line 4 times 12) 66.088.64
6. Percent contribution of each parent (line 3, each parent,
divided by line 4)[*****] 40.6% 59.4%
7. Monthly support from table 1 1,098.89
8. Each parent's monthly share (line 7, times line 6, for each
parent) 446.69 652.19

NOTES
[*] Court will require copies of last 2 years' tax returns to verify "total income" figures and copies of present wage stubs to verity the pattern of present wage earnings, except where a party is claiming an allowance of depreciation as a deduction from income, in which case a minimum of 5 years' tax returns shall be required income should be annualized and divided by 12 to arrive at monthly amounts.
[**] All claimed deductions should be annualized and divided by 12 to arrive at monthly amounts.
[***] Deductions for taxes will be based on the annualized income and the number of exemptions provided by law.
[****] The increased cost to the parent for health insurance for the child(ren) of the parent shall be allowed as a deduction from gross income. The parent requesting an adjustment for health insurance premiums must submit proof of the cost of the premium.
[*****] In the event of substantial fluctuations of annual earnings of either party during the immediate past 3 years, the income may be averaged to determine the percent contribution of each parent as shown in item 6. The calculation of the average income shall be attached to this worksheet