IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

ARNDT V. ARNDT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMES J. ARNDT, APPELLANT,

V.

JODI A. ARNDT, APPELLEE.

Filed May 30, 2017.    No. A-16-250.

Appeal from the District Court for Adams County: STEPHEN R. ILLINGWORTH, Judge. Affirmed.

Andrea Finegan McChesney, of McChesney & Farrell Law, for appellant.

No appearance for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief, Judge.

### INTRODUCTION

James J. Arndt appeals from an order of the district court for Adams County in response to his motion to determine the proper allocation and amount of child support due pursuant to the parties' decree of dissolution. On appeal, James argues that the court erred in determining that a settlement of past due child support only covered support ordered in a second divorce action, not support ordered in a previously dismissed divorce action involving the same parties. Because we find no error, we affirm.

BACKGROUND

*First Divorce Action and Temporary Order for Child Support.*

On March 30, 2007, Jodi A. Arndt filed a complaint for dissolution of marriage. On April 25, a temporary stipulated child support order was entered, establishing that James would pay the sum of $530 per month in support, to commence May 1, 2007, on behalf of the parties' minor child. On May 13, 2010, the court dismissed this matter for lack of prosecution.

*Second Divorce Action and Decree of Dissolution.*

On May 13, 2010, Jodi filed a new complaint for dissolution with the district court. On November 19, a temporary child support order was filed, establishing that James would pay the sum of $492 per month, to commence on May 1, 2010.

On June 21, 2012, the court entered a decree of dissolution. Attached and incorporated into the decree was a "child custody and property settlement agreement." Pursuant to the settlement agreement and decree, James was to pay $2,500 on or before August 21, 2012, as full settlement of all child support and medical expenses owed through June 21. If James failed to pay this sum by August 21, the decree provided that a judgment would be entered against him in the amount of $6,496.15. The settlement agreement and decree further provided that the Nebraska Child Support Payment Center "shall adjust their records to reflect that (James') child support shall be deemed satisfied in full with a zero balance as of June 30, 2012." The settlement amount was paid shortly after entry of the decree. The settlement agreement and decree required James to pay $405 per month in child support commencing July 1, 2012.

*Motion Regarding Child Support Arrearages and Order.*

On January 9, 2014, James filed a "motion regarding child support arrearages." This motion was prompted by the interception of James' 2012 state and federal tax refunds by the Nebraska Child Support Payment Center. James received correspondence indicating that the intercepted funds were to be applied to child support arrearages arising from both the original temporary support order, pursuant to the first divorce action, and support arising from the second divorce action. James alleged that he was previously unaware that the payment center was still collecting on both divorce cases.

James asserts in his motion that the temporary support order in the first divorce was erroneously accruing arrearage and the payment center was incorrectly applying child support payments between the first and second divorce cases as a result. James claimed that the second divorce case and resulting child support orders were meant to replace the temporary support order from the first divorce case. He alleged it was the full intent of the parties, as expressly stated in the dissolution decree and settlement agreement, that all child support arrearages, including those arising from the original temporary support order, would be deemed satisfied.

James sought a determination from the court that the settlement of past due child support contained in the dissolution decree included all support previously ordered in both divorce cases. He further requested an order directing the payment center to amend his child support payment history to reflect a zero balance as of June 30, 2012.

A hearing on James' motion was held on January 27, 2014. The only evidence received were three exhibits, which included a payment history for the temporary child support order pursuant to the first divorce action (beginning May 1, 2007), a payment history for child support orders pursuant to the second divorce action (beginning May 1, 2010), and child support enforcement correspondence from the Nebraska Department of Health and Human Services and the United States Department of the Treasury.

On February 27, 2014, the court entered its order overruling James' motion. The court concluded that "intent" to have the settlement payment result in a zero balance of support owed in both the first and second divorce cannot be inferred from the language of the dissolution decree. The court found that "[h]ad the parties intended to zero out both cases, that should have been clearly set out in the Decree." The court concluded that since the arrearage accrued in the first divorce case was for child support, "it could not be extinguished without clear language to that effect."

*Motion to Reconsider.*

On March 7, 2014, James filed a motion to reconsider the court's order, asserting again that the decree was intended to satisfy both child support orders. Attached to this motion was an affidavit from James' counsel at the time of the dissolution decree, asserting that the parties' intended all child support arrearages to be deemed satisfied.

In addition, James alleged in this motion that the court lacked jurisdiction to enter an order regarding child support arrearages arising from the original temporary support order. James claimed that after the first divorce case was dismissed, the issue of a child support arrearage was not preserved, and the temporary support order ceased. Once the first case was dismissed, James claimed there was nothing invoking the court's jurisdiction over the parties regarding this prior case.

A final order was eventually entered on February 8, 2016 which effectively denied the motion to reconsider. James subsequently perfected this appeal.

## ASSIGNMENTS OF ERROR

James assigns, restated, that the district court erred in (1) finding the intent of the parties did not include elimination of all child support arrearages despite the plain language of the settlement agreement and decree and (2) failing to find it lacked jurisdiction over a previously dismissed action between the parties.

## STANDARD OF REVIEW

The meaning of a dissolution decree presents a question of law, in connection with which an appellate court reaches a conclusion independent of the determination reached by the court below. *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014).

The standard of review of an appellate court in child support cases is de novo on the record, and the decision of the trial court will be affirmed in the absence of an abuse of discretion. *Anderson v. Anderson*, 290 Neb. 530, 861 N.W.2d 113 (2015).

ANALYSIS

*Intent of Parties.*

James argues that the district court failed to follow the unambiguous plain language of the agreement and decree and the intent of the parties in denying his motion regarding child support arrearages.

James argues that the language of the decree, directing payment of $2,500 in full settlement of all child support and adjustment by the payment center of their records to reflect a zero balance, establishes that the parties intended all child support arrearages, including those arising from the original temporary support order, were to be deemed satisfied in full.

A decree is a judgment, and once a decree for dissolution becomes final, its meaning, including the settlement agreement incorporated therein, is determined as a matter of law from the four corners of the decree itself. *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014).

Ambiguity exists in a document when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Rice v. Webb, supra.* If the contents of a dissolution decree are unambiguous, the decree is not subject to interpretation and construction, and the intention of the parties must be determined from the contents of the decree. *Id.* If the contents of a dissolution decree are unambiguous, the effect of the decree must be declared in the light of the literal meaning of the language used. *Id.*

Upon our de novo review, we conclude that the unambiguous terms of the settlement agreement and decree do not reflect an intent by the parties to zero out child support arrearages in both divorce cases. The provisions of the decree regarding James' past due child support payments and the settlement payment of $2,500 to satisfy past due support make no mention of the previous divorce case or the temporary order of support entered in that case.

Any intent by the parties to zero out child support arrearages arising from the original temporary support order cannot be inferred from the content of the dissolution decree. A literal reading of the decree only supports the elimination of child support arrearages arising in the second divorce action in which the settlement agreement and decree were filed. As noted by the district court, "[h]ad the parties intended to zero out both cases, that should have been clearly set out in the Decree." Further, as the court also concluded, since the arrearage which accrued in the first divorce case was for child support, "it could not be extinguished without clear language to that effect." The district court did not abuse its discretion in declining to infer an intent in the decree which is not contained in the express language of the settlement agreement and decree.

James' first assignment of error is without merit.

*Enforceability of Original Temporary Child Support Order.*

James argues, alternatively, that the original temporary child support order ceased to exist when the first divorce action was dismissed. He argues that the issue of child support in the first divorce action was not preserved, and thus the district court lacked jurisdiction to take action concerning the original temporary order.

In support of his argument, James cites to the Nebraska Supreme Court opinion of *Schroeder v. Schroeder*, 223 Neb. 684, 392 N.W.2d 787 (1986). In *Schroeder*, temporary orders,

including restraining orders pertaining to property, were entered in the divorce action. Thereafter, upon motion of the wife, the court dismissed the case without prejudice. The husband attempted to vacate the dismissal, asserting that the wife had violated one of the temporary orders concerning property. The district court denied the husband's motion and the Supreme Court affirmed. The Supreme Court held that "[o]nce the wife's petition was dismissed, there was nothing invoking the court's jurisdiction over these parties. Consequently, the temporary orders perished at the moment the wife's suit ceased to exist." *Id.* at 687. The court went on to note, however, that the husband's property rights were not permanently affected in the dismissed action and that should a second divorce action be brought, the court with jurisdiction at that time would be able to address the property matters.

James claims that the present case parallels *Schroeder*, in that once the first divorce action was dismissed, the temporary child support order perished. We disagree. The holding in *Schroeder*, with its focus on the temporary orders affecting property, does not stand for the proposition that temporary child support ordered before a case is dismissed is extinguished by its dismissal.

Child support payments become a vested right of the payee in a dissolution action as they accrue. *Gress v. Gress*, 257 Neb. 112, 596 N.W.2d 8 (1999). See, also, *State on behalf of Kayla T. v. Risinger*, 273 Neb. 694, 731 N.W.2d 892 (2007); *Dartmann v. Dartmann*, 14 Neb. App. 864, 717 N.W.2d 519 (2006). A court may modify the amount of child support due in the future but may not forgive or modify past-due child support. *Gress v. Gress, supra*. See, also, *State ex rel. L.L.B. v. Hill*, 268 Neb. 355, 682 N.W.2d 709 (2004); *Lucero v. Lucero*, 16 Neb. App. 706, 750 N.W.2d 377 (2008) (such payments become vested in the payee as they accrue, and generally, the courts are without authority to reduce the amounts of such accrued payments).

An exception to the foregoing rule involves the doctrine of equitable estoppel. *Truman v. Truman*, 256 Neb. 628, 591 N.W.2d 81 (1999). See, also, *Trogdon v. Trogdon*, 18 Neb. App. 313, 780 N.W.2d 45 (2010); *Lucero v. Lucero, supra* (the articulated exception to the vesting rule concerns situations in which the payee is equitably estopped from collecting the accrued payments). Alternatively, the district court may, on motion and satisfactory proof that a past-due child support judgment has been paid or satisfied in whole or in part by the act of the parties thereto, order it discharged and canceled of record, to the extent of the payment or satisfaction. *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991). See, also, *Lucero v. Lucero, supra*.

Applying the foregoing principles, we conclude that the original temporary child support order, and the arrearages arising from it, did not cease to exist upon dismissal of the first divorce action. Rather, these temporary support obligations vested with Jodi as they accrued. The dismissal did not amount to a forgiveness of the arrearages arising from the temporary order, nor was it necessary for Jodi to take action to preserve the arrearages.

James did not ask the district court to use the doctrine of equitable estoppel to forgive his delinquent temporary child support obligation arising from the first divorce action. In fact, he asserts that the district court would not have had jurisdiction to do so. Even had James attempted to invoke the doctrine of equitable estoppel, the record does not support it. The exhibits received in evidence show that James was delinquent on his temporary child support obligation in the first divorce action in the sum of $1,534.52 at the time that it was dismissed. In the second divorce action, the payment records show that James was delinquent in the sum of $3,267.73 as of June

21, 2012. In addition, the settlement sum was also to satisfy James' obligation for outstanding medical expenses through June 21, 2012, the amount of which is not contained in the record. We note, however, that had James failed to timely pay the $2,500, a judgment in the sum of $6,496.15 would have been entered. Thus, the payment of $2,500 in "full settlement" does not support the application of equitable estoppel to forgive his past due temporary child support payments from the first divorce proceeding which had vested in Jodi upon becoming due.

We conclude that the district court did not abuse its discretion in declining to find that the temporary child support obligation ceased to exist upon dismissal of the first divorce action.

James' second assignment of error is without merit.

## CONCLUSION

The district court did not err in determining that any intent of the parties to zero out child support arrearages for both divorce cases could not be inferred from the language of the dissolution decree. Further, the court did not err in declining to find that the temporary child support obligation ceased to exist upon dismissal of the first divorce action. Therefore, we affirm.

AFFIRMED.